## SUPREME COURT.

### NATHANIEL BUTOLPH agt. MAX BLUST.

A *constable* or an *alderman*, cannot, at common law, make an *arrest* without warrant, where there is no breach of the peace.

Under the provisions of the charter of the city of Syracuse an *alderman* or *policeman* may arrest any person who may be found committing any violation of *an ordinance* of the city, without warrant—such as cruelly whipping a horse in a public street of the city.

And a *delay* of half an hour in making the arrest, does not deprive the officers of the right to make it. Generally such time is not an unreasonable delay.

But such an arrest cannot be made by these officers *outside* the limits of the city of Syracuse, as where the person arrested, on seeing the approach of the officers stepped over the city limits into the town of Salina—the division line being near him.

*Fourth Department, Syracuse General Term, April,* 1871. *Before* MULLIN, *P. J.,* TALCOTT *and* JOHNSON, *JJ.*

THE plaintiff brought this action to recover damages against the defendant for an alleged assault, battery and false imprisonment of the plaintiff by the defendant.

In May, 1870, the plaintiff, (who is a farmer residing in the town of DeWitt, in Onondaga county), visited the city of Syracuse, for the purpose of doing some trading. He was accompanied by his wife, and drove one horse harnessed to a light buggy wagon. On his way home, and when within a very few rods of the line separating the city of Syracuse and the town of Salina, his horse baulked and refused to proceed further. While moderately punishing him, the defendant, who was a stranger to the plaintiff, and who was intoxicated at the time, approached him and told him to whip the horse upon his fore legs, and that he thought that would make him go. The plaintiff complied with the request, and while whipping the horse upon his fore legs, he

was struck at by the horse in a violent manner, and the plaintiff struck the horse once over the head with the butt end of the whip. The defendant then spoke, and told the plaintiff not to strike the horse again or he would have the plaintiff arrested. The plaintiff replied that he could whip the defendant and the horse too. After that, the defendant went away, and in about half an hour, returned with a policeman. After the defendant went away, the horse was not whipped, nor was there any disturbance at the place of the occurrence; but the plaintiff and others were engaged in trying to push the horse and wagon along, and though making little progress, had gradually approached the city limits, and when the defendant was seen approaching with the policeman, the plaintiff went outside the limits of the city and into the town of Salina; and while in the town of Salina, was, by the policeman, acting under defendant's directions, arrested and brought within the city. The arrest was without process.

The plaintiff was, by the defendant, clinched and thrown violently against the wheel of a wagon, although he did not resist at all or refuse to obey any command.

After the arrest he was taken before a magistrate of the city, and the plaintiff offered to show that the defendant procured a warrant to be issued against him, and that he was tried and acquitted. The evidence, on objection by the defendant, was excluded and the defendant excepted. The defendant was an alderman of the second ward of the city of Syracuse, but at no time during the transaction did he disclose that fact.

At the close of the plaintiff's evidence, the court, on motion of the defendant, non-suited the plaintiff upon the ground that the defendant had a right to arrest within the town of Salina, and that the defendant was justified as matter of law in what he did. To these rulings the plaintiff excepted.

The court directed a stay of proceedings and that the

Butolph agt. Blust.

exceptions should be heard at general term in the first instance.

I. D. GARFIELD, *for plaintiff, and appellant.*

I. The alderman had no authority to give the plaintiff into custody.

1st. Because an alderman is an officer unknown to the common law, and his powers are defined and limited by the law creating the office, *(section 7, title 4, charter of the city of Syracuse.)*

2d. Under the charter, they have no jurisdiction to arrest or cause to be arrested, without process, any person outside of the city limits.

3d. They can only arrest a person whom they shall find committing a violation of an ordinance.

In the case at bar, the party arrested was, when arrested, beyond the jurisdiction of the alderman. And at the time of the arrest no offense was being committed.

By § 2 of chap. 1, relating to the ordinance of the city of Syracuse, it is provided that,

" The aldermen * * * shall have power to arrest or cause to be arrested, as aforesaid, all persons who shall be found in the act of violating, or who may reasonably be suspected of having committed any crime or misdemeanor, or of having violated any ordinance of the city for the preservation of peace and good order."

Under this ordinance we claim :

1. That the alderman cannot arrest outside of the city.

2. That they cannot arrest, without process, for violation of the ordinance relating to cruelty to animals, *unless the ordinance is being violated at the time.* ( *Pow* agt. *Beckner,* 3 *Ind. R.,* 475 ; *Cook* agt. *Nethercote,* 6 *C. & P.,* 741 ; *Coupey* agt. *Henley,* 2 *Esp.,* 540 ; *Fox* agt. *Gaunt,* 3 *B. & Ald.,* 798 ; *Phillips* agt. *Inell,* 11 *John.,* 486).

3. That if by its terms, it is to be construed as affording

.authority upon the alderman to arrest outside of the limits of the city, or after the offense has been committed, then it is an authority which the common council of the city of Syracuse, under the charter, had no right to confer upon them, and is void.

If it can be held that the alderman has power to arrest outside the limits of the city, and after the offense had been committed, we say:

II. That it should have been submitted to the jury to say, whether, in making the arrest, the officer was guilty of an assault and battery; because it was proven:

1. That the plaintiff did not resist the officer, or refuse to obey his commands.

2. That the officer did clinch the plaintiff, and push or throw him violently against the wheel of a wagon, thereby causing the plaintiff a great deal of pain.

And the jury might well have found that this was such an abuse of authority as would entitle the plaintiff to damages. (*Imason* agt. *Cope*, 5 *Car. & P.*, 193).

III. If it shall be held that the alderman had power to arrest for the past violation of the ordinance, then it must also appear that "he had reasonable cause to suspect the party arrested of having violated the ordinance."

This question of reasonable cause was a question of fact upon the evidence in the case, and should have been submitted to the jury.

It is this aspect of the case in which it is submitted on the part of the plaintiff, that the offer to show the trial and acquittal of the plaintiff was competent, and the evidence should have been received.

The non-suit should be set aside, and a new trial granted.

PRATT, MITCHELL & BROWN, *for defendant, and respondent.*

I. Cruelly beating or ill-treating a horse is a misdemeanor.

1. It is made so by statute. (2 *R. S.*, 695).

2. It is made so by the city ordinance. The 6th section of chap. 2 of the ordinances of the city of Syracuse provides that, " any person who shall inhumanly, unnecessarily or cruelly beat, injure, or otherwise abuse any dumb animal, shall be subject to a fine of $25.

3. By section 6 and 7 of title 4, of the city charter, the power is given to the common council to make ordinances and the violation of them, a misdemeanor. (*Session Laws* 1857).

II. The aldermen of the city have the right to make arrests and take before the police justice, or officer acting as such, any person whom they shall find committing a crime or violating an ordinance of the city.

1. This is given by the city charter. (*Title* 9, *section* 6, *and* 7).

2. This power is still more enlarged by the city ordinance, (*Chap.* 1, § 2), which provides that, " the aldermen shall have power to arrest or cause to be arrested, all persons who shall be found in the act of violating, or may reasonably be suspected of having committed any crime or misdemeanor, or having violated any ordinance of the city," &c.

It is not necessary that the arrest should be made while the crime is being committed, but it is sufficient that it be done within a reasonable time.

(*a*). By the ordinance it may be made after the crime has been committed and upon the information of others.

(*b*). Aldermen have the right to arrest any one whom they find committing a violation of any ordinance, &c. (*charter*, title 4, § 7.).

(*c*). As no time is prescribed within which an arrest shall be made, it is sufficient that it be done within a reasonable time.

(*d*). In this case, the officer was threatened by the plaintiff, if he should attempt to arrest him, to lick him and the

horse too. As soon, therefore, as he could procure necessary assistance, he made the arrest (*Reg.* agt. *Light, Bears and B.,* 332 ; 7 *Cox, C. C.,* 389 ; *Taylor* agt. *Strong,* 3 *Wend.,* 384, 386 ; 1 *Chitty's Gen'l Prac.,* 619).

III. In this case the crime was not committed in the presence of the officer, but when he attempted to prevent its continuance, plaintiff refused to desist, and threatened to commit a breach of the peace.

1. He whipped the horse, and struck him over the head with the butt-end of his whip, threatened to knock him down, and called for a club for that purpose.

2. When ordered to stop, or the defendant would cause him to be arrested, he threatened to lick both defendant and the horse.

3. The evidence was ample to show that a misdemeanor was committed, and it was not disputed upon the trial.

4. Besides, it was a matter for the officer to decide whether the treatment of the horse was inhuman or cruel. He would not, therefore, be liable had he decided erroneously.

IV. It is no objection to the power of the defendant to arrest plaintiff that the latter, to avoid being arrested, slipped out of the city limits.

1. The power given by the charter and ordinances to arrest is general, without limitation as to place or locality. The court should not prescribe limits for the exercise of this authority, which the statute has not prescribed.

2. If a warrant had been issued, the plaintiff would have been liable to arrest anywhere in the county. It is not, therefore, perceived why, in cases where an arrest may be made without warrant, the jurisdiction of the officer as to locality is not equally extensive.

3. It would be a very inconvenient restraint upon police officers, and their efficiency for keeping good order would be greatly impaired, if crimes, misdemeanors and breaches of the peace can be committed in their presence, and when

they attempt to arrest the criminal he can escape by running out of the city.

(*a*). By such a construction the whole policy of the law justifying arrests without process, would, in many cases, be defeated.

(*b*). When offenses happen to be committed near the boundaries of the city, arrests could rarely be made, and unless the officers were the fleetest runners, arrests could not be made in any case.

4. Aldermen of cities are made by statute magistrates, to keep the peace, and have power to issue warrants, which may be executed anywhere in the county (2 *R. S.*, 727, § 1, 729, § 1 *and* 4).

(*a*). As such magistrates, they have general power to arrest for crimes committed in their presence, or for threatened breaches of the peace (1 *Bishop Crim. Pro., Sub.* 34 ; *Law of Arrests*, 171 ; *Holcomb* agt. *Cornish*, 8 *Com.*, 375).

(*b*). As conservators of the peace and officers of the government, they have authority derived from the general rights of the government without any statute whatever upon the subject, to exercise all necessary force for the prevention of crime, either by arrest of individuals, or by the seizure and detention of the instruments of crime (*Bishop Sup.*, 640 ; *Spalding* agt. *Preston*, 8 *Vermont*).

5. They seem also by the charter to have the same authority as policemen to make arrest without process, and policemen have the same power in criminal matters as constables of towns and counties (*Title* 5, § 5).

6. At common law, a sheriff or constable, although strictly a county officer, might pursue and arrest a felon in another county, either with or without warrant (2 *Hale's Pleas of the Crown*, 94).

7. By all the analogies of the law, therefore, by every consideration of public policy, an officer of the city should not be confined to the limits of the city, in making an ar-

Butolph agt. Biust.

rest where the crime is committed in the city within his own view.

V. There was no question for the jury as to the good faith of the defendant in making the arrest.

1. There was no proof of bad faith.

2. The evidence shows that not only a statutory crime was committed, but a violation of an ordinance of the city. It was, therefore, not material with what motive he made the arrest.

VI. The motion for a new trial should, therefore, be denied.

*By the court,* MULLIN, P. J.—The defendant was an alderman of the city of Syracuse. In May, 1870, the plaintiff was in the city with his horse and wagon. The horse baulked and the plaintiff beat him with his whip on the legs and struck him with the butt of it on his head. The defendant saw the whipping and deeming it cruel, told the plaintiff to desist or he would have him arrested. The plaintiff told defendant he would whip the horse and him too. The defendant went for the police officer to make the arrest. He returned in about half an hour, and the plaintiff seeing them approach, went across the city line into the town of Salina. The defendant while the plaintiff was in Salina, directed the police officer to arrest him, and he did so. The officer had no process authorizing the arrest. He made it on the authority of the defendant.

After the arrest was made some violence was done to plaintiff's person. He was taken before the police justice of Syracuse, and an examination had.

The action was for damages resulting from the imprisonment which is alleged to be false. The court non-suited the plaintiff and directed the case to be heard on the exceptions in the first instance at the general term.

Cruelty to an animal is a misdemeanor, as well by the Revised Statutes, (*See 2d Statutes at Large,* 717, § 26), as by

Butolph agt. Blusl.

the by-laws of the city of Syracuse (*Section 6, chap. 2 of the ordinances*).

By the charter of the city, (§ 6, 7, *of title 4 of the laws of* 1857, *chap.* 63), the violation of the ordinances of the common council is declared to be a misdemeanor.

By section 1, title 2, chapter 2, part 4 of the Revised Statutes, aldermen of cities are authorized to execute the power conferred in that title.

The powers thus conferred are to hear complaints against persons accused of crime, issue process for their arrest, take the examination when the prisoners are brought before them, and in certain cases to let them to trial.

At common law, an arrest could not be made of a person charged with a misdemeanor, except on the warrant of a magistrate, unless it involved a breach of the peace in which case the offender might be arrested by any person present at its.commission. (1 *Chitty Crim. Law.*, 15; *Carpenter* agt *Mills*, 29 *How.*, 473). But in cases of felony it might be, (*same ; Haley* agt. *Mix* 3 *Wend.*, 350).

It is said in (2d *Haley's Pleas to the Crown*, 86), that if a justice of the peace see a felony or other breach of the peace committed in his presence, he may, in his own person, apprehend the felon. And so he may command any person to apprehend him, and such a command is a good warrant without writing. But if the felony or other breach of the peace be done in his absence, then he must issue in writing under his seal to apprehend the malfactor, and if there be any riot or breach of the peace likely to happen by a tumultuous meeting, &c., he may command his servants or others to prevent it by arresting the parties.

A constable, it is said, by the same author, may by his own inherent and original power, imprison a person for a breach of the peace, and certain specified misdemeanors less than felony, but the offense of which the plaintiff is charged is not one of them. (2 *Hale's Pl.*, 90).

It said that in case of an affray the constable may with-

out warrant arrest, in order to prevent it; yet, if the affray be past and no danger of death, he cannot arrest without a warrant. But *Hale* is of opinion that in such case, the constable may arrest, and take the prisoner before a justice to find surety of the peace, or for appearance.

When a felony is committed, or in case of suspicion of felony, the accused flies into another county, the constable pursuing him may follow him into an other county, and arrest him ; but, when he makes the arrest, he must take the prisoner before a magistrate of the county in which the arrest is made (2 *Hale's Pl.*, 94).

It follows that at common law neither the defendant nor the constable, could arrest the plaintiff without warrant, as there was no breach of the peace.

It remains to inquire whether it could be done by either under the charter of the city.

Section 7 of the charter provides, that it shall be lawful for any alderman and policeman to arrest, retain, and take before the justice every person whom they or any of them shall find committing a violation of any ordinance of the city.

By this section, the officers named in it, are clothed with powers belonging to sheriffs, constables and police officers. And they may be exercised without warrant. The object, unquestionably was, to authorize summary arrests and to obviate the delay incident to procuring a warrant.

The defendant found plaintiff committing a violation of an ordinance of the city and was, therefore, authorized to arrest him, and call in the aid of the police officer to effect it as might a justice of the peace at common law, when a crime was commited in his presence. (2 *Hale*, 86).

The delay of half an hour in making the arrest in the case, did not deprive the defendant of the right to make it.

In *Regna* agt. *Walker*, (25 *E. L. & E.*, 589), it was held that an arrest made by a constable for resisting him in

making an arrest two hours after the resistance, was unlawful.

In *Taylor* agt. *Strong*, (3 *Wend.*, 384), it is said, that an arrest without warrant for breach of the peace in the presence of an officer, may be made in a reasonable time, (*See also Descounts* agt. *Corbisbly*, 85, *E. C. L.*, 187), what is a reasonable time is upon undisputed facts for the courts, and half an hour is not in my opinion, an unreasonable time.

If an arrest cannot be made except immediately on the commission of an offense in many cases, offenders would escape punishment.

In case of an offense committed by a number of persons in the presence of an alderman, he would be incapable of arresting them if they resisted. If he may not delay arresting until he can procure help, punishment would be rendered impossible.

I have no doubt, but that the arrest was properly made, provided it could be made outside the limits of the city.

I do not find any authority upon the question, whether in cases of misdemeanor an officer authorized to arrest for an offense committed in his presence, may pursue the offender out of his own jurisdiction. At common law it was the duty of such an officer, in case of felony, to raise the hue, and cry, and then pursue the criminal into any other jurisdiction, and there arrest him.

This power being limited to cases of felony, it would seem, that no such right of pursuit existed in cases of misdemeanors.

At common law, an arrest on warrant must be made within the jurisdiction of the officer who issued it. (1 *Chitty's Crim. Law*, 49).

It would be somewhat singular if an officer without warrant could arrest beyond his jurisdiction, when, upon his warrant he could not.

In felony, an arrest upon a warrant of a justice, could be made any where within the county, (1 *Chitty Crim. Law*,

49), but in cases of misdemeanor, the arrest must be made within the jurisdiction of the officer issuing it.

Violations of municipal regulations could be committed with impunity, if the officer who is present at the commission of the offense, must stop at the city or village boundery when in pursuit of the offender, because his jurisdiction there ends. Yet, I find no case that authorizes him to arrest beyond the village or city limits.

No such right existed at common law, when the officer was without warrant, and I know of no provision of law, that authorizes it now.

The nonsuit must be set aside, and a new trial ordered, costs to abide the event.