STATE v. STANCILL.

(Filed May 28, 1901.)

1  HOMICIDE—*Manslaughter—Evidence—Sufficiency—Officer.*

The charge of the trial judge in this case that, if the jury believed the evidence of the defendant, he was guilty of manslaughter, is correct.

2. ARREST—*Without Warrant—Officer—The Code, Sec. 1126.*

The superintendent of a convict gang is not such an officer as contemplated by The Code, Sec. 1126.

`3. ARREST—*Homicide—Arrest Without Warrant.*

The superintendent of a convict gang, not known to be an officer, has no right to shoot or kill one who, having committed petty larceny and having escaped from prison, is running away to avoid arrest.

CLARK and COOK, JJ., dissenting.

INDICTMENT against W. S. Stancill, heard by Judge *Thos. J. Shaw* and a jury, at September Term, 1900, of the Superior Court of GASTON County. From a verdict of guilty of manslaughter, the defendant appealed.

*Robert D. Gilmer,* Attorney-General, for the State.
*Clarkson & Duls, Osborne, Maxwell & Keerans,* and *Burwell, Walker & Cansler,* for the defendant.

FURCHES, C. J. The prisoner was indicted for the murder of one Frank Rossell, who had been convicted of the larceny of one peck of corn, growing in the field, in the Criminal Court of Mecklenburg County, in December, 1888, and sentenced to twelve months' imprisonment in jail, with leave to the Commissioners to hire him out. And under

this sentence he was placed on the chain-gang for that county, and on the 14th of January, 1889, he escaped. F. W. Sossaman was the Superintendent at that time. The prisoner had been Superintendent of the camp for two years or more before he killed Rossell. The homicide occurred in Gaston County, and it was in evidence that the deceased had been living in that county for nine or ten years.

There were several witnesses introduced for the State, among them William Black, whose character was proved to be good; and among other things he testified: "I asked Stancill if he caught his man, and he said the first time he shot he did not shoot to hit him; but the second time, if he missed him, it was not his fault, for he aimed right at his back. He said he could have caught the durned rascal, but he did not want to."

But as the Court put its charge on the prisoner's evidence, we give that in full:

Wm. S. Stancill, the prisoner: "I was Superintendent of convict camp for Mecklenburg County for two years or more prior to the shooting. It is the duty of the Superintendent to capture escaped convicts. I heard of Frank Rozzell being in Gaston County. Griffin spotted escapes. He located and reported and I went to capture him. I had no warrant or other proof for Rozzell when I shot him. I met his wife at the door, and she said her husband had gone off. I saw him standing at the window. I went to the window. He had stepped about down inside of the house, and I said: 'Hold up; you are my prisoner.' He did not give me time to tell him who I was. Scott was coming around to meet me, and deceased made for the door. He got out and ran, and I after him. He fell first, and I got close to him, and I fell, and he gained distance on me. I was hallooing 'Halt' every jump. I had my pistol in my hand. · I ran him a piece of the way. I got up and shot, and had no intention to hit him the first

time, nor the second time.   I ran him until I gave out at branch, and he got out of sight.   I did not know he was hit till Saturday night afterwards, and this was on Wednesday morning.   I turned back, and met Mr. Black, and he asked me if I was after him for that old grudge, and I told him I was; and he said they were getting a petition to have him pardoned; and I told him if I had known that I would not have bothered him.   I think I told Mr. Black if I did not catch him it was not my fault.   I did not tell him I did not try to catch him.   I made both shots in the cotton patch, and he jumped the fence after he was shot.   I told Sheriff Love and Chief of Police of Charlotte that I shot to frighten him, and did not intend to hit him, and did not know until they arrested me that I had hit him.   I had no badge of office on."

Cross-examined: "I won't swear that I did not state to Mr. Black that I aimed to hit.   Don't remember having told Rufus Johnston that I shot to kill him.   I did not notify the deceased that I was an officer or that I was connected with the convict camp in Mecklenburg County.'"

The Court charged the jury that if they believed the evidence of the prisoner he was guilty of manslaughter, upon his own evidence.   Prisoner excepted and, upon judgment being pronounced, appealed to this Court.

The prisoner puts his defence upon the ground that he had the right to arrest Rossell, under section 1126 of The Code; and if this is so, he had the right to arrest Rossell, who was an escaped convict, as the Superintendent of the convict camp.   And, finally, that Rossell, being an escaped felon, he had the right, as a private citizen, to arrest him; and, having this right, he had the right to shoot and kill him if necessary.

We do not think the prisoner had the right to arrest, under section 1126 of The Code.   He was not a "Sheriff, Coroner, Constable or officer of police, or other peace officer, entrusted with the care and preservation of the public peace," within

the meaning of that statute. Nor do we think the fact that the prisoner was the Superintendent of the convict camp in Mecklenburg County gave him any authority to make the arrest, under the facts in this case. And in saying this, we will not be understood to say that we do not think the Superintendent of a convict camp would not, ordinarily, have the right to arrest an escaped convict. This, we think he would have, where the convict knew that he was such Superintendent. And he would have this right in such case without making known the fact that he was such Superintendent, as this would be useless if the escaped prisoner knew the fact. Nor do we think that, in such a case, it would be necessary for such Superintendent to procure any other authority to do so. In fact, we know of no one who would be authorized to give him any other authority.

But, in this case, it had been ten years since Rossell escaped, and when he did so, one Sossaman was the Superintendent. The prisoner did not know Rossell, and had him pointed out; and there is not the slightest evidence that Rossell knew him, or knew that he was Superintendent of convicts in Mecklenburg County. This being so, we are of the opinion that the prisoner had no more right to make the arrest than any private citizen would have had.

The case then comes down to be discussed upon the right a private citizen would have had to make the arrest, and the duties developing upon him, and rights and liabilities in making such arrest.

A private citizen has the right to arrest a felon, whether he is present when the felony is committed or not. When he is not present, it devolves on him to show that the felony, for which he arrested, had been committed. *Neal v. Joyner*, 89 N. C., 289. He has the same right in cases of an escaped felon. 2 Am. and Eng. Enc., 887, and note 1.

Where a *known* officer is attempting to make an arrest for an assault and battery, and the defendant knows what he is wanted for, the officer need not show his warrant. But it is otherwise if the officer is not known to the defendant, and, in such case, he would have to show the warrant. *State v. Garrett,* 60 N. C., 144.

A private citizen, attempting to arrest a felon without warrant, must make his purpose known, and for what offence. And unless he does so, the party attempted to be arrested has the right to resist the arrest. *Neal v. Joyner,* and *State v. Garrett, supra; State v. Belk,* 76 N. C., 10; *State v. Mc-Ninch,* 90 N. C., 695.

Where a private person undertakes to arrest a felon or an escaped felon, and has made his purpose and reason for the arrest known, he must then proceed in a peaceable manner to make the arrest, and if he is resisted he may use such force as is necessary to overcome the resistance, if used for that purpose alone. 2 Am. and Eng. Enc., 906, note 2. But this is put upon the ground that the party attempting to make the arrest becomes personally involved, and he has the right to defend himself. *State v. Bryant,* 65 N. C., 327. But where the attempted arrest is for a petty larceny, as in this case, and the party runs off, the party attempting the arrest has no right to shoot and kill him. *State v. Bryant, supra.*

In this case the prisoner did not make himself known to the deceased, nor the reason for the arrest. Nor did the deceased *resist* the arrest, but ran as for his life and the prisoner ran after him and shot and killed him. This he had no right to do.

In the case of *State v. Roane,* 13 N. C., 58, a case in some respects similar to this, Judge *Henderson* commenced his opinion by saying: "If the facts stated are true, the defendant has no cause to complain of the verdict." And it seems to us that if the evidence in this case is true, the prisoner has

no cause to complain of the charge of the Judge, the verdict of the jury, or the sentence of the Court.

No error appearing to us, the judgment is

Affirmed.

COOK, J., dissenting. It is with hesitancy that I dissent from the decision of the Court; but my views differ so widely that I feel it my duty to do so. Had deceased been an *accused* person, the reasoning expressed by the Chief Justice would be applicable and forceful. Every person is presumed to be innocent of crime until legally tried and convicted. Therefore the law protects its citizens in the enjoyment of liberty, and prescribes the mode and manner by which they may be arrested and brought to trial, entrusting the execution of the same to its officers, who are required to take a solemn oath in the performance of their duties.

Arrests can be made by no one for alleged offences, unless upon a warrant based upon an affidavit issued by a judicial officer, except those enumerated in sections 1124, 1125, 1126 and 1129 of The Code, in which cases the alleged offenders must be taken immediately before such magistrate, who, on proper proof, shall issue a warrant and thereon proceed to act as prescribed by law. In authorizing the arrest of one who is in the legal enjoyment of his liberty, the law, presuming his innocence, protects him from imposition of those not known to be officers, by requiring such to make known their legal authority before he is obliged to surrender.

In *State v. Garrett,* 60 N. C., 144, at page 150, it is held: "One who is not a known officer ought to show his warrant, and read it if required, but it would seem that this duty is not so imperative as that a neglect of it will make him a trespasser *ab initio,* where there is proof that the party, subject to be arrested, had notice of the warrant and was fully aware of its contents," etc.

So careful is the law to protect those who have not been tried and convicted, that the "outlaws" are entitled to be "called upon and warned to surrender" before they are allowed to be slain.  Code 1131.  But they belong to the same class—*"accused"*—with those to whom the authorities cited in the opinion of the Court refer, and relate to the conduct and power of officers in making the arrest *in limine*.  After an arrest has been made, it is the duty of the officer to *hold* him, even if it becomes necessary to take his life in doing so. In *State v. Sigman,* 106 N. C., 732, it is held that "after an accused person has been arrested, an officer is justified in using the amount of force necessary to detain him in custody, and he may kill his prisoner to prevent his escape, provided it becomes necessary, whether he be charged with a felony or misdemeanor."  1 Bishop Cr. Pr., sec. 618.  Why should the *escaped* convict be entitled to any more protection than while escaping?  He can not fall within the protection of those sections of The Code which are made for the benefit of those having a legal right to control their time and conduct before a conviction.  No machinery of the law is provided for the capture of an escaped felon under sentence.  Warrants are provided for the arrest of the accused, to the end that the truth may be inquired into—not for the convicted. After conviction and sentence, the felon has no liberty.  By his own wilful conduct he has forfeited it, and it has been so adjudged.  Having escaped the prison to which he was consigned, the law owes him no protection.  None owe him succor or comfort.  He is the prisoner of the State, and should be captured wherever and by whomsoever found.  While the law imposes no obligation upon citizens generally to capture him, yet they are forbidden to receive, relieve, comfort or assist him.  Yet it is the legal duty of those officers, who were encharged with the custody of such convict, to go and take him wherever he is known to be; for his personal liberty

is not within the pale of any jurisdiction. He has no right to question the authority of his captor, or to require the reading of a warrant or capias, for the law has made no such provision in his behalf.

When the deceased undertook to make his escape, he well knew, or ought to have known, that it was the duty of his custodians to stop his flight, by taking his life, if it could not be accomplished otherwise. Code, sec. 3443. Having gotten beyond their reach, his liberty still belonged to the State, to which he had forfeited it, and a duty rested upon those charged with his confinement to reduce him to their custody again, and in doing so he was entitled to no duty other than humane treatment after being reduced to custody, and not to be wantonly or wilfully killed, if his capture could otherwise be accomplished. The length of time intervening had not made him oblivious to the fact that the custody of his body belonged to the prison whence he had fled, and upon the sight of the strangers and hearing the words, " Hold up," "You are my prisoner," he recognized the presence of legal authority for his capture, and resumed the same risk which he took when he first made his escape. What else could the officer have done? Should he have been required to use only those means necessary to arrest an unconvicted citizen, which, if insufficient to arrest, to allow him to escape, or should he have used those means required to prevent the original escape? It appears to me that the officer did all in his power to capture him without taking his life. He gave him the same warning that the law allows to an unconvicted "outlaw." First, he ordered him to stop, and told him that he was his prisoner, then pursued, hallooing "Halt" at every jump, then firing his pistol to warn, and lastly, firing to hit. To have done less would not have been the utmost effort of the officer.

In retaking him, the same force was permissible that was

allowable in keeping and detaining in custody an "accused" person after arrest.

Considering the law, as I view it in this case, the prisoner was justified and ought to have been acquitted.

CLARK, J., concurs in the dissenting opinion.