## SOSSAMON v. CRUSE.

(Filed November 24, 1903.)

1. INSTRUCTIONS—*Trial.*

> It is improper to instruct the jury that "if they believe from the evidence" certain facts, then certain consequences will follow. The language should be: "if they find from the evidence."

2. ARREST—*Assault—Policeman—The Code, secs. 1124, 3810, 3811—Towns and Cities.*

> A policeman who makes an arrest without a warrant outside the corporate limits of a town for the breach of an ordinance is guilty of an assault.

3. ARREST—*Assault—Excessive Force.*

> The use of a pistol in attempting to arrest for a misdemeanor is excessive force.

4. ARREST—*Assault—Escape—Damages.*

> Where a person is fleeing from arrest, charged with a misdemeanor, and is out of the control of the officer, such officer is guilty of an assault if he shoots at the said person.

ACTION by J. W. Sossamon against John Cruse, heard by Judge *Thomas J. Shaw* and a jury, at May Term, 1903, of the Superior Court of CABARRUS County. From a judgment for the defendant the plaintiff appealed.

*Montgomery & Crowell,* for the plaintiff.
*W. G. Means* and *L. T. Hartsell,* for the defendant.

WALKER, J. This is an action to recover damages for an assault. At the time of the alleged assault there was an ordinance in force in the town of Concord prohibiting loud and profane swearing within its corporate limits, and defendant and Luther Biles were policemen of the town.

There was evidence tending to show that plaintiff and one Maxwell were fighting on the streets, when the defendant, who

SOSSAMON *v.* CRUSE.

had heard loud cursing, went to where they were and accused them of fighting, and arrested Maxwell, and the plaintiff then said that anybody who accused him of fighting told a lie, at the same time cursing the defendant, who struck the plaintiff with his "billy" and knocked him down. The defendant and Biles then jumped upon him, and defendant told Biles to "tap him again." In the struggle plaintiff took the "billies" from both of the policemen and escaped by running beyond the town limits. As he was running away the defendant and Biles pursued him and shot at him several times. Plaintiff ran to a point across the creek, and about one hundred yards beyond the corporate limits, when the defendant and Biles approached within five or six feet of him and demanded the possession of the "billies." The plaintiff refused to give them up, when the defendant shot him. The plaintiff fell and the defendant and Biles ran up and handcuffed him and carried him to the mayor's office, "where he was tried for using loud and profane swearing." On the other side there was evidence tending to show that the defendant acted lawfully and was entirely within his right when he first arrested or attempted to arrest the plaintiff, and that when he had escaped and was running away the defendant did not fire at him, though Biles did; that when the defendant asked plaintiff for the "billies" the latter advanced upon him in a threatening attitude, and the defendant then shot the plaintiff in self-defense.

The plaintiff requested the Court to charge the jury as follows: "If the jury find from the evidence that the plaintiff had violated the town ordinance against loud and profane swearing on the streets, and that the defendant had attempted to arrest him, and that plaintiff got loose and was running from defendant, and while so running defendant had shot at him with a pistol, then, in law, that would be an assault, and they should respond 'Yes' to the first issue." This instruction the Court refused to give, and the plaintiff excepted.

The Court charged the jury fully in regard to the power of a policeman to arrest for the violation of a town ordinance when the offense is committed in his presence, and to this part of the charge there was no objection by the plaintiff, but exception was taken to the following passages in the charge of the Court:

"1. If you are satisfied from the evidence that the defendant had reasonable grounds to believe and did believe that plaintiff was violating in his presence the ordinance prohibiting loud and profane swearing in the corporate limits of the town of Concord, and arrested the plaintiff, although the defendant was mistaken, he would be excused, and you are the judges of the reasonableness of the grounds upon which the defendant acted.

"2. If the jury believe from the evidence that the plaintiff was violating, in the presence of the defendant, the ordinance of Concord prohibiting loud and profane swearing within the corporate limits, and the defendant, not being actuated by ill-will, malice, hatred or malevolent purpose, arrested the plaintiff, and the plaintiff, not being out of the control of the defendant, attempted to escape, and to prevent such an escape the defendant fired his pistol, such firing would not constitute an assault."

Before discussing what we regard as the principal and vital question in the case we will call attention to the phraseology of the second passage taken from the charge of the Court. The jury is there told that if they "believe from the evidence" the facts therein recited, the acts of the defendant did not constitute an assault. This Court has referred to this form of expression as being open to the objection that the jury might believe that certain facts existed when they would not be willing to find that they did exist and that the law as given by the Court to the jury should be based not upon their belief merely, but upon the facts as found by them under the rule

SOSSAMON *v.* CRUSE.

of law as to the burden of proof and such proper instructions from the Court as will enable the jury to intelligently weigh and apply the evidence. *State v. Barrett,* 123 N. C., 753; *Wilkie v. Railroad,* 127 N. C., 203.

We are of the opinion that upon the evidence in the case the Court should have given the instruction asked by the plaintiff in his prayer. The exception to the refusal to give the instruction may conveniently be considered with the first of the above instructions given by the Court, to which exception was also taken. That instruction was, in substance, that if the plaintiff had been lawfully arrested, and, "not being out of the control of the defendant, had attempted to escape, and to prevent such an escape the defendant fired his pistol, such firing would not constitute an assault." This instruction, in view of what seems to be the uncontroverted facts in the case, was erroneous.

It appears that the defendant attempted to arrest the plaintiff without a warrant "for loud and profane swearing on the streets of Concord, in violation of the town ordinances," to use his own words. The plaintiff, according to his testimony, cursed the defendant and called him a liar, and thereupon the defendant knocked him down and an altercation between them ensued. According to the defendant's testimony, when he arrested the plaintiff for loud and profane swearing the latter resisted the arrest and struck the defendant twice, and the defendant then struck the plaintiff with the "billy" and got upon him and tried to put his twisters on his wrists. According to the testimony of both sides, the plaintiff overpowered the officers and escaped with their "billies." The defendant and Biles, the other officer, pursued him beyond the corporate limits. In this connection plaintiff testifies as follows: "When I ran they shot several times at me." The defendant, when within a few feet of the plaintiff, fired at him and the pistol ball struck him in the knee. He testified

that when he did so the plaintiff was advancing upon him, though the plaintiff testified that the defendant fired at him and shot him in the knee because he refused to give up the "billies." The evidence therefore tended to show that the plaintiff had escaped and was flying from arrest when he was fired upon by the defendant and Biles, and that when the defendant shot him in the knee he had succeeded in escaping from his pursuers and was not then, nor was he at any time when the pistols were fired, within their reach or under their control.

It is provided by law that every person present at any riot, rout, affray or other breach of the peace shall interfere to suppress and prevent the same, and if necessary for that purpose shall arrest the offenders. The Code, sec. 1124. It shall be lawful for city and town constables to serve all civil or criminal process that may be directed to them by any court within their respective counties under the same regulations and penalties as prescribed by law in the case of other constables. The Code, sec. 3810. A policeman shall have the same authority to make arrests and to execute criminal process within the town limits as is vested by law in a sheriff. The Code, sec. 3811.

It will be observed that the power of policemen to make arrests, except when they are acting in obedience to the process of a court under section 3810, is confined to the corporate limits of the town. We do not think, therefore, that the defendant had a right to pursue the plaintiff beyond the town limits in order to arrest him after he had escaped. When the prisoner had escaped from the custody of the officer he certainly had no more power or authority to re-arrest him than he had when the original arrest was made, and his power in the latter case could only be exercised within the town limits. *State v. Sigman,* 106 N. C., 728; *State v. Stancill,* 128 N. C., 606; *Wright v. State,* 44 Texas, 645. If he had

failed in his first attempt to arrest the plaintiff and the latter had escaped beyond the town limits, the defendant could not have pursued him for the purpose of making the arrest, and it follows, therefore, that his pursuit of the prisoner beyond the limits after he had successfully resisted arrest and escaped was unlawful. *State v. Freeman,* 86 N. C., 683, and cases *supra.*

But assuming, for the purpose of the argument, that he could lawfully have pursued the defendant beyond the corporate limits in order to effect his arrest, he clearly had no right to use excessive force, and the use of a pistol, which is a deadly weapon, in attempting to arrest one charged only with the commission of a misdemeanor is excessive force. In such a case the life of the offender must not be imperiled when he is only flying from arrest and trying to escape. This doctrine is well settled. McClain, in his work on Criminal Law, sec. 298, says: "In attempting to make an arrest, where the person to be arrested, instead of resisting, seeks to make his escape, there is a difference, depending on the gravity of the offense for which the arrest is being made, as to whether the officer may do an act calculated to take life. If the offense for which the arrest is being made is a felony the person (whether an officer or not, provided he is lawfully arresting) may take life if necessary in order to effect the arrest. But if the offense for which the arrest is being made is a misdemeanor there is no right to take life, and the person seeking to make the arrest will be guilty of a crime in doing so. As to resisting the escape of a prisoner under arrest or in confinement, it seems that the officer may resist so far as necessary, and if the attempt is so violent as to make it necessary to take life in preventing such escape the officer will be justified in doing so, whether the prisoner is under arrest for felony or misdemeanor, or even (at common law) merely under civil process. It is probable, however, that even as to preventing

escape the officer is justified in taking life only to prevent escape for felony, or where, the offense being a misdemeanor, in resisting force with force if his own life is put in peril, and not where he takes life merely to prevent escape of one charged with a misdemeanor. But the officer will be justified in taking life only where he has reasonable ground to believe, and does believe, that it is necessary in making the arrest or preventing escape or defending himself, and the jury must judge of this on the facts."

We find the same doctrine laid down in Wharton on Criminal Law, secs. 404 and 405 : "Unless it be in cases of riots it is not lawful for an officer to kill a party accused of misdemeanor if he fly from arrest, though he cannot otherwise be overtaken. Under such circumstances (the deceased only being charged with a misdemeanor) killing him intentionally is murder (at common law) ; but the offense will amount only to manslaughter if it appear that death was not intended. Where resistance is made, yet if the officer kill the party after the resistance is over and the necessity has ceased, the crime will at least be manslaughter. And it is manslaughter for an officer to kill a prisoner in prevention of an escape when the escape could be prevented by less violent means.    *    *    * The reasonable rule is that when a man flies from arrest, the charge being a mere trespass or an offense equivalent to a trespass, to kill him in prevention of an escape is at least manslaughter. It is otherwise, supposing the arrest to be duly authorized and notice duly given, where the offense is of high grade, assailing life or public safety."

This Court, in *State v. Sigman, supra,* referring to the distinction in this respect between an arrest for felony and one for a misdemeanor only, has recognized what we have already stated and what we have quoted from the books as the law in such cases, and relies upon *Hale, Foster, Wharton* and *Bishop* as authority. "A very different principle," says

the Court, "prevails where a party charged with a misdemeanor flees from an officer who is entrusted with a criminal warrant or *capias* in order to avoid arrest. The accused is shielded in that event, even from an attempt to kill with a gun or pistol, by the merciful rule which forbids the risk of human life or the shedding of blood in order to bring to justice one who is charged with so trivial an offence when it is probable that he can be arrested another day and held to answer." 1 Bishop Cr. Pr., 616. An officer who kills a person charged with a misdemeanor while fleeing from him is guilty of manslaughter at least. 1 Wharton's Cr. Law, sec. 5 (9th Ed) ; 2 Bishop's Cr. Law (7th Ed.), sec. 649.

After an accused person has been arrested an officer is justified in using the amount of force necessary to detain him in custody, and he may kill his prisoner to prevent his escape, provided it becomes necessary (1 Bishop's Cr. Pr., sec. 618), whether he be charged with a felony or a misdemeanor. But when a prisoner charged with a misdemeanor has already escaped the officer cannot lawfully use any means to recapture him that he would not have been justified in employing in making the first arrest; and if in the pursuit he intentionally killed the accused it is murder, and if it appear that death was not intended the offense will be manslaughter."

Applying these principles to the facts of our case, we must hold that the defendant had put himself, as an officer, beyond the pale of the law's protection when he pursued the plaintiff beyond the town limits and fired at him with his pistol, whether he intended to kill him or not. Such use of the pistol as would have made the defendant guilty of manslaughter if he had killed the plaintiff was an assault, even if no actual injury was done. *State v. Sigman, supra.* In the language of *Justice Foster,* "It behooves the officers of the law to be very careful that they do not misbehave themselves

in the discharge of their duty, for if they do they may forfeit its special protection." Foster's Crown Law, p. 319.

It may be that the defendant will be able to show that he acted in self-defense when he shot the plaintiff in the knee, and that while he may not have been justified as an officer in inflicting the wound he was so justified as an individual, as the pistol was fired only when in self-defense. But we will not pass upon this question, as it is not necessary to do so, and, indeed, it is not clearly presented in the record. We can only say that for the reasons we have given the Court should have instructed the jury as requested to do by the plaintiff, and that the charge of the Court to which we have already referred was erroneous. We can see no objection to the other part of the charge to which exception was taken. *Neal v. Joyner,* 89 N. C., 287; *State v. McNinch,* 90 N. C., 695.

The verdict must be set aside and a new trial awarded, and it will be so certified.

New trial.