EDWARD RODGERS, RESPONDENT, v. HARRY SCHROEDER AND RICHARD SHELTON, APPELLANTS.*

St. Louis Court of Appeals. Opinion filed September 21, 1926.

**1.—Arrests—Municipal Officers—Powers.** Generally, in the absence of any statute conferring the power, municipal officers, such as marshals and policemen, have no official power to apprehend offenders beyond the boundaries of their municipalities.

**2.—Same—Same—Same—Statutes—Construction.** Statutes authorizing municipal officers, such as marshals and policemen, to make arrests upon view and without process, being in derogation of liberty, are strictly construed.

**3.—Same—Same—Same—Power to Arrest Without Process for Violation of Ordinances—Should Not be Enlarged by Judicial Construction.** The power of municipal officers, such as marshals and policemen, to arrest without process for mere quasi-criminal offenses arising from the violation of ordinances being liable to serious abuses, ought not to be enlarged by judicial construction beyond what is expressly granted or necessarily implied in the statute.

**4.—Same—Same—Same—Violation of Automobile Speed Ordinance—Misdemeanors—City Marshals—Not Authorized to Make Arrests Beyond City**

**Limits.** Sections 8329 and 8240, Revised Statutes 1919, do not confer upon the marshal, assistant marshal or policeman the power to make arrests without process beyond the limits of the city for violating an automobile speed ordinance of such city, such officers, under the provisions of section 8244, being authorized only to make arrests beyond the limits of the city upon process issued by a police judge.

**5.—Instructions—Ignoring Defenses—Covered by Defendants' Instruction— Not Error.** Error in instructions given on behalf of plaintiff which ignored certain defense **held** cured by an instruction given at the request of defendants covering defendants' theory of such defense.

**6.—Same—Failure to Define Words "Unlawfully, Willfully, Wantonly and Maliciously"—Not Prejudicial in Absence of Request for Definition.** In an action for personal injuries caused by the overturning of an automobile alleged to have been forced off the road by defendants, who were city marshals, in order to effect plaintiff's arrest for violation of a speed ordinance, an instruction employing therein the words "unlawfully, willfully, wantonly, and maliciously" to characterize the acts of the defendants hypothesized as a basis for a verdict in favor of plaintiff for actual damages as directed therein, without defining such words, **held** not prejudicial to defendants, especially in view of their failure to request an instruction defining the words.

**7.—Same—Only Actual Damages Awarded—Objection to Instruction on Punitive Damages—Not Considered.** Criticism of plaintiff's instruction relating to punitive damages need not be considered where only actual damages were awarded.

**8.—Evidence—Rebuttal Testimony—Competancy.** In an action for personal injuries caused by the overturning of an automobile alleged to have been forced off the road by defendants, who were city marshals, in order to effect plaintiff's arrest for violation of a speed ordinance, where a witness for defendants testified that he overheard a conversation in which the plaintiff said that he ran over one boulevard stop on the night of the accident, plaintiff's testimony in rebuttal that he said he made the stop was admissible.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 855, n. 39; 4CJ, p. 1045, n. 51; Arrest, 5CJ, p. 409, n. 34 New; p. 422, n. 62; Evidence, 22CJ, p. 195, n. 3; Expressio Unius, etc., 25CJ, p. 220, n. 17; Municipal Corporations, 28 Cyc, p. 496, n. 68; p. 501, n. 20; Statutes, 36Cyc, p. 1122, n. 48, 49; Trial, 38Cyc, p. 1636, n. 16.

Appeal from the Circuit Court of Franklin County.—Hon. R. A. Breuer, Judge.

Affirmed.

*James Booth, Virginia J. Booth, H. A. Krog* and *Jesse H. Schaper* for appellants.

*W. L. Cole* for respondent.

SUTTON, C.—This is an action for personal injuries. The petition charges that, on April 30, 1925, while plaintiff in company with his wife and others were driving in an automobile upon a public highway leading from Washington to Union, known as the Wash-

ington Union Road, defendants unlawfully, wilfully, wantonly, and maliciously assaulted plaintiff and fired numerous shots at him from pistols, and followed the plaintiff as he proceeded toward Union and crowded their vehicle in which they were driving in front of the plaintiff's automobile and forced his automobile off the road at a point where the road was elevated several feet above the adjacent lands, causing his car to be overturned, and that plaintiff sustained severe injuries to his face, head, hand, and body as a result thereof. The answer denies generally the allegations of the petition and charges by way of an affirmative defense that the defendant Richard Shelton was at the time of the alleged assault, marshal of the city of Washington in the county of Franklin and State of Missouri, duly organized and existing as a city of the third class under the laws of the State of Missouri, and that the defendant Harry Schroeder was at the time of the alleged assault, assistant marshal of said city; that there was at the time in force and effect in said city, ordinances providing that no one shall drive a motor vehicle within the limits of the city on a public highway or street·at a greater rate of speed than fifteen miles per hour; that motor vehicles, when driving north·or south on Jefferson Street, should come to a stop on approaching the intersection of Jefferson Street with Fifth Street and before passing over said intersection; and that persons violating any of the pro· visions of said ordinances shall be guilty of a misdemeanor; that the plaintiff, when driving a certain motor vehicle south on Jefferson Street in said city, failed to come to a stop when approaching and before passing over said Fifth Street, where said Jefferson Street intersects said Fifth Street, and drove and operated said motor vehicle on and along said Jefferson Street at a greater rate of speed than fifteen miles per hour; that the plaintiff thereby violated the provisions of said ordinances and that he violated the same in the presence of the defendants; that the defendants undertook to arrest the plaintiff for the violation of said ordinances, but that plaintiff resisted arrest and for the purpose of avoiding arrest fled from the defendants in said motor vehicle over and along said Jefferson Street; that thereupon in the discharge of their duties as such officers they pursued plaintiff on or along said Jefferson Street and overtook him on said Jefferson Street and attempted to arrest him, but that in so doing they did not at any time use more force than was reasonably necessary to make such arrest; that any and all injuries that plaintiff may have sustained were the direct result of his own unlawful act in failing and refusing to submit to such arrest by said defendants and in escaping from such arrest by defendants.

The cause was tried to a jury, there was a verdict and judgment in favor of plaintiff for five hundred dollars, and the defendants appeal.

220 Mo. App.—37.

On the evening of April 30, 1925, the plaintiff, who resided at Union in Franklin county, drove in a Ford touring car to Washington, in the same county, to attend church. He was accompanied by his wife and three girls, Ruth Gerling, Mittie Adams, and Ethel Adams. After having attended church, plaintiff, with his wife and three guests, started home about ten o'clock. He drove south on Jefferson Street and the public road which is a continuation of Jefferson Street and runs south from Washington to Union. On arriving at a point on the public road something over a quarter of a mile south of the southern limits of Washington, the car was overturned, and plaintiff was thereby injured.

The plaintiff's testimony, which was corroborated by the testimony of his wife and guests, shows that he stopped his car on approaching the intersection of Jefferson Street with Fifth Street and before crossing over the same, and then drove south on Jefferson Street at a speed of about ten miles per hour; that while he was so driving south on Jefferson Street and when he had reached the outskirts of the city, the defendants in a large touring car drove up behind him sounding their horn; that he turned his car to the right to let them pass; that they passed him and stoppd their car on the right side of the street some distance in front of his car; that they got out of their car, and one of them exhibited a gun and said to plaintiff, "Damn you stop, damn you stop;" that they did not proclaim their official character, nor their purpose; that they wore no insignia indicating their official character; that plaintiff, believing that he was being beset by robbers, declined to obey their command to stop, and drove on south toward home at the best rate of speed he could make with his Ford car; that defendants followed in their large touring car; and as they did so fired a number of shots from their revolvers; that, on overtaking the plaintiff, they drove along close by the side of his car on the left; that the cars were then moving rapidly; that defendants, by veering their car to the right, and in front of plaintiff's car, crowded or forced it off the road into the ditch, whereby it was overturned; that defendants' car continued south and stopped a short distance ahead of plaintiff's overturned car; that plaintiff and the parties with him, abandoning their car, ran across a field to a farm house and were thence taken to Union where plaintiff received medical attention.

The defendants testified that they were in their car at the northeast corner of the intersection of Jefferson and Fifth Streets when the plaintiff was proceeding south on Jefferson Street; that plaintiff was exceeding a speed of fifteen miles per hour, and ran over the intersection without stopping, in violation of the ordinances of the city; that they followed him for the purpose of arresting him for the violation of the ordinances, and that what they did was done in their at-

tempt to arrest him. They also testified that they made no attempt to arrest him after he got beyond the city limits, and denied that they crowded or forced him off the road or caused his car to overturn. They stated that they ran past the plaintiff and stopped in the road ahead of him for the purpose of discovering his identity, and that they were four hundred feet ahead of him when his car overturned.

It is conceded that defendants had no warrant for plaintiff's arrest.

The court, at the instance of the plaintiff, gave to the jury an instruction advising them that the defendants had no right to make arrests outside of the limits of the city of Washington without being in possession of a warrant authorizing them so to do. The action of the court in giving this instruction is assigned as error here. The defendants insist that, under the provisions of sections 8239 and 8240, Revised Statutes 1919, they had the power as marshall and assistant marshal of the city of Washington to make arrests without process in cases of offenses against the laws of the city committed in their presence, and that they were also clothed with power to pursue the plaintiff beyond the limits of the city in order to effectuate his arrest. The sections of the statute relied on are as follows:

''Sec. 8239. The marshal shall be chief of police, and shall have power at all times to make or order an arrest with proper process, for any offense against the laws of the city, and keep the offender in the city prison or other proper place to prevent his escape until a trial can be had before the proper officer, unless such offender shall give a good and sufficient bond for his appearance for trial. The marshal shall also have power to make arrests without process in all cases in which any offense against the laws of the city shall be committed in his presence.''

''Sec. 8240. There may be one assistant marshal, who shall serve for a term of one year, and shall perform the duties of the marshal at such times as the marshal may be absent, disqualified or unable to act. At other times, the assistant marshal shall render services as a regular member of the police force.''

The provisions of section 8244 of the same statute are also pertinent, as follows:

''The marshal, assistant marshal and policemen shall have power to serve and execute all warrants, subpoenas, writs, or other process, issued by the police judge of the city, at any place within the limits of the county within which the city is located. The marshal, assistant marshal and all policemen of the city shall be conservators of the peace, and shall be active and vigilant in the preservation of good order within the city.''

These sections occur in article 4 of chapter 72 of the statute, and relate to cities of the third class.

It is generally held, in the absence of any statute conferring the power, that municipal officers, such as marshals and policemen, have no official power to apprehend offenders beyond the boundaries of their municipalities. [Sossamon v. Cruse, 133 N. C. 470, l. c. 474; Martin v. Houck, 141 N. C. 317; Butolph v. Blust, 41 How. Pr. 481; Lawson v. Buzines (Del.), 3 Har. 416; Page v. Staples, 13 R. I. 306; Moak v. De Forrest, 5 Hill 605; Sullivan v. Wentworth, 137 Mass. 233; Ressler v. Peats, 86 Ill. 275; Krug v. Ward, 77 Ill. 603; Kindred v. Stitt, 51 Ill. 401; McCaslin v. McCord, 116 Tenn. 690; State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. 191.] And statutes authorizing such officers to make arrests upon view and without process, being in derogation of liberty, are strictly construed. [Low v. Evans, 16 Ind. 486.] The power of such officers to arrest without process for mere *quasi*-criminal offenses arising from the violation of ordinances is liable to serious abuses, and ought not to be enlarged by judicial construction beyond what is expressly granted or necessarily implied in the statute. It is clear that our statute does not expressly confer upon the marshal, assistant marshal, or policemen, the power to make arrests without process beyond the limits of the city, and we see nothing in the statute from which such power may be implied. On the contrary, the provision of the statute expressly authorizing these officers to make arrests beyond the limits of the city upon process issued by the police judge appears to warrant the application of the maxim, *expressio unius exclusio alterius*. [State ex rel. McNamee v. Stobie, 194 Mo. 14, l. c. 57, 92 S. W. 191.]

In Sossamon v. Cruse, supra, which was an action to recover damages for an assault committed by a policeman of the town of Concord, in attempting to arrest the plaintiff without process beyond the limits of the town, for an offense against the ordinances of the town committed in the presence of the officers, the Supreme Court of North Carolina, under a statute similar to our own, ruled as follows:

"We do not think, therefore, that the defendant had a right to pursue the plaintiff beyond the town limits in order to arrest him after he had escaped. When the prisoner had escaped from the custody of the officer he certainly had no more power or authority to re-arrest him than he had when the original arrest was made, and his power in the latter case could only be exercised within the town limits. [State v. Sigman, 106 N. C. 728; State v. Stancill, 128 N. C. 606; Wright v. State, 44 Texas 645.] If he had failed in his first attempt to arrest the plaintiff and the latter had escaped beyond the town limits, the defendant could not have pursued him for the purpose of making the arrest, and it follows, therefore, that his pursuit of the prisoner beyond the limits after he had successfully resisted arrest and escaped was unlawful."

We conclude that the defendants were without authority to go beyond the limits of the city of Washington to effectuate the arrest of the plaintiff without process, and there was no error in the giving of the instruction complained of. We are not concerned here, of course, with the power of marshals, assistant marshals, and police officers of towns and cities to make arrests for felonies.

Error is assigned upon the giving of other instructions on behalf of plaintiff, on the ground that they ignore the defense that the defendants were officers engaged in an effort to arrest the plaintiff for violating the ordinances of the city of Washington, and that plaintiff was resisting arrest and fleeing from them. There is no merit in this assignment, since the court gave to the jury an instruction at the request of the defendants covering defendants' theory of this defense.

Plaintiff's instruction No. 1 is further objected to on account of the employment therein of the words, "unlawfully, wilfully, wantonly, and maliciously," to characterize the acts of the defendants hypothesized as a basis for a verdict in favor of plaintiff for actual damages as directed therein, without defining such words. If the acts hypothesized were "wilfully, wantonly, and maliciously" done in the usual and ordinary sense of these words, as we must assume they were understood by the jury, they were "unlawfully" done, and justified the verdict directed. In fact, the employment of these words placed upon the plaintiff a greater burden than he was bound to carry under the law. It was sufficient to authorize the verdict directed that the acts hypothesized were wilfully, that is, intentionally, done. The words complained of were used conjunctively, and we do not see how the jury could have been misled to the prejudice of the defendants by the use of the words in the instruction without defining them. Moreover, the defendants apparently did not fear that the jury would be misled to their prejudice, since they did not request an instruction defining the words.

We need not stop to discuss the defendants' criticism of plaintiff's instruction No. 2, since it relates to punitive damages, and only actual damages were awarded by the jury.

The defendants produced as a witness in their behalf Frank C. Freise, who testified that he overheard a conversation between the plaintiff and Christ J. Arand at Union on the morning following plaintiff's injury, concerning plaintiff's experience on the night of his injury, and that in the course of the conversation he heard the plaintiff say that he ran over one boulevard stop in the city of Washington on that night. The plaintiff, produced in rebuttal, testified as follows:

"I was going to the doctor, and Christ Arand came out of the door and says, 'What is the matter with you?' 'Well,' I says, 'I turned

over in a car.' He says, 'What was the matter?' I said, 'Found out this morning it was marshals, last night I thought it was hold-ups. They crowded me out of the road and I turned over.' He says, 'Where was you at?' I says, 'Coming up this hill from Washington.' He says, 'Did you make your stops?' I says, 'I did. I only had one to make and I made it.' That was the only conversation I had around there at which Freise was present.''

This testimony was introduced over the objection of the defendants on the ground that it was irrelevant and immaterial, and not in rebuttal, and its admission is assigned as error here on the ground that it was not evidence in rebuttal but was merely evidence of self-serving declarations made by the plaintiff in his own behalf and not in the presence of the defendants. The assignment is untenable. The defendants having themselves produced evidence of the conversation, the plaintiff was entitled to state his version of it to the jury.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.