STATE of Missouri, Respondent,

v.

Edward Eugene COLLETT, Appellant.

No. 59313.

Supreme Court of Missouri,
En Banc.

Nov. 8, 1976.

Edward J. Bippen, Asst. Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Judge.

Defendant, found guilty on two counts charging robbery in the first degree with a dangerous and deadly weapon, was sentenced under the second offender act to two consecutive sentences of 27 years each in the custody of the Division of Corrections. On appeal the Missouri Court of Appeals, St. Louis District, affirmed. Thereafter, on application of defendant, the case was transferred to this court pursuant to Art. V, § 10, Mo.Const. We have reviewed the case as though here on direct appeal, and we affirm.

On the evening of March 31, 1973, Mary Osburg and Sandy Kempen were the employees operating a pizza parlor in St. Louis. A man came in and at gunpoint took money from the cash register and took the women's purses plus a jacket belonging to Sandy Kempen. He then left, ordering Mary Osburg to accompany him. Outside the pizza parlor, the man placed the jacket over Mary's head and then directed her to enter a truck and sit on the floor.

After driving for a while, the man stopped the truck and took Mary into a room, then he pulled her blouse, causing the buttons to come off. He tied her to the bed, later forced her into a small room, and finally returned her to the truck. He drove for a short time, releasing her on the side of a highway with her hands still tied and the jacket over her head. Mary succeeded in getting a car to stop and was then taken back to the pizza parlor in St. Louis.

On the morning of April 2, 1973, several Missouri officers went to Illinois in search of defendant on a charge of escape. They had information that he could be located at the Interstate Motor Inn on Collinsville Road. They had a warrant for his arrest which they took to an Illinois magistrate from whom they secured an arrest order for defendant. They did not seek or obtain a search warrant. At that time the officers did not know of any connection between defendant and the pizza parlor robbery.

Accompanied by Illinois deputy sheriffs, the officers then went to the Interstate Motor Inn. There the manager was shown several photographs. She picked out one of defendant, identifying him as a man registered in Room 102 of the motel under the name of Douglas Hurst. The officers then went to Room 102, the door of which was

opened for them by the motel personnel. They proceeded immediately to search the room for defendant, looking in the bathroom, the shower area and under the bed. Upon entering the room, the officers had observed two women's purses on the floor next to the dresser. When they did not find defendant, they went to the purses. Looking inside, they found identifications of Sandy Kempen and Mary Osburg. They had heard Mary Osburg's name mentioned in radio dispatches on the pizza parlor robbery and also had read about it that morning in the police department summary of recent crimes.

Two of the officers were going to remain at the motel to await a possible return by Collett but after they learned over their radio that Collett had been arrested in Franklin County, Missouri, on an unrelated charge, all officers returned to St. Louis, bringing with them the two purses and their contents. They had not seized anything else in the room and took nothing else with them. Before leaving they asked the manager not to let anyone take anything from Room 102.

After the officers returned to St. Louis, the purses were identified by Mary Osburg and Sandy Kempen as those taken in the robbery. The officers also exhibited to each girl separately a group of 6 or 8 photographs which included defendant. In each instance the girl pointed out defendant as the one who had held up the pizza parlor.

The officers then took Mary Osburg and her mother to Illinois to the Interstate Motor Inn where Mary was shown Room 102. She identified it as the room to which she had been taken by defendant. While at the motel, she was shown four buttons and a set of keys which the motel manager had found in and removed from Room 102 after the police had left that morning. She identified the keys as hers and the buttons as those torn from her blouse by defendant.

The girls were then taken to Union, Missouri, where they observed separately a lineup of six persons including defendant. Each picked out defendant as the person who held up the pizza parlor.

Defendant filed a motion to suppress evidence obtained from the motel room including the two purses and the various identification cards contained therein. A hearing was held, after which the motion was overruled. At trial defendant objected to introduction of the purses, identification cards, the blouse buttons and the keys, the latter two both found by the motel manager. The objections were overruled.

■ At the outset, we note that a timely motion for new trial was not filed. The record on appeal does not show that the time for filing such a motion was extended by the trial court. However, even if the court had granted the maximum permissible extension to a total of 40 days, the motion filed still would have been out of time. Hence, whatever review is made of grounds asserted on appeal must be under Rule 27.20(c) which authorizes consideration of plain errors affecting substantial rights even though not properly preserved.

Defendant's first such contention involves the admissibility of certain evidentiary items (the purses, identification cards, blouse buttons and keys) found in and taken from the motel room. He argues that a motel room rented by a suspect is to be accorded the same constitutional protection against unreasonable search and seizure as is the suspect's home and that since the officers had no search warrant and the items were not seized incident to a lawful arrest, their seizure was violative of defendant's rights under the fourth and fourteenth amendments to the Constitution of the United States and Art. I, § 15, Mo. Const.

■ In considering this issue, we recognize that defendant's motel room was to be accorded fourth amendment protection against unreasonable search and seizure. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Even so, when the officers entered that room after motel personnel opened the door for them, the officers were where they had a right to be. They had a warrant issued in Missouri for defendant's arrest on a charge of escape.

They took that warrant to a magistrate in St. Clair County, Illinois, who then issued an order for defendant's arrest. Accompanied by Illinois deputy sheriffs, they then proceeded to the Interstate Motor Inn for the purpose of arresting defendant. Under S.H.A., Ch. 38, § 107–5, Ill.Rev.Stat., these officers were authorized to use all necessary force to effect an entry into any building to make an authorized arrest. *People v. Johnson,* 45 Ill.2d 283, 259 N.E.2d 57 (1970). Illinois courts have held that an officer is authorized to use a door key to gain entry if the person to be arrested is there or reasonably believed to be there. *People v. Scott,* 13 Ill.App.3d 620, 301 N.E.2d 118 (1973). It follows that an officer could gain entry by means of having the door opened with a key by motel personnel. While there was no evidence introduced to show that the officers had information that defendant actually was in the room when they sought entry, it did show that they had information that he could be found at that motel and the manager informed them that he was registered in Room 102 under what appeared to be an assumed name. As soon as the door was opened, the officers searched the room for defendant, indicating an expectation that he was there. Under these circumstances, we conclude that the officers had reasonable cause to believe that defendant would be found in the room and that their action in having the motel personnel open the room to enable them to enter and arrest defendant was permissible.

After the officers were unable to locate defendant in the room, they turned their attention to the two women's purses which they had seen on the floor at the time they entered the room. The officers then looked inside and found the various identifications of Mary Osburg and Sandy Kempen.

Under such circumstances, did the officers violate fourth amendment rights of defendant when they seized the two purses and then looked inside and discovered and seized the identification cards contained therein?

■ At the outset, it is apparent that the purses were not found as the result of a search. They were on the floor, not hidden or concealed in any way. They were in plain view of the officers and were observed by them as they rightfully entered the room for the purpose of executing the arrest warrant for defendant. The mere observation of what is in plain view does not constitute a search. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *State v. Engberg,* 377 S.W.2d 282 (Mo.1964); *State v. Harre,* 280 S.W.2d 41 (Mo.1955). The question for resolution, therefore, is whether seizure of the purses, the examination of their contents and the seizure of the identification papers were reasonable and justifiable under the circumstances.[1]

The plain view doctrine was considered again in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). That case, however, is authority for the proposition that plain view alone is not enough to justify a warrantless seizure. It is necessary that (1) the evidence be observed in plain view while the officer is in a place where he has a right to be, (2) the discovery of the evidence be inadvertent and (3) it is apparent to the police that they have evidence before them. *Id.* at 465–466, 91 S.Ct. 2022. In this case all three of those requirements are met. First, as previously noted, the officers were where they had a right to be for the purpose of making an arrest. Secondly, they had no knowledge that these purses might be found in the room. They had no information linking defendant with the pizza parlor robbery. Their discovery of the purses was inadvertent. Finally, the officers were looking for a known escapee and had a warrant for his arrest. When the officers did not find defendant in the room, they naturally were concerned with his whereabouts. He had

---

1. For detailed analysis of cases dealing with the plain view doctrine, see Annot. 29 L.Ed.2d 1067 (1972). See also pertinent discussion of the scope of the fourth amendment in Knox, *Some*

*Thoughts on the Scope of the Fourth Amendment and Standing to Challenge Searches and Seizures,* 40 Mo.L.Rev. 1 (1975).

registered in this motel under an assumed name. No woman or women were registered in the room. Women had not been observed by motel personnel visiting the room. The presence of two women's purses in the room of this escapee was at least somewhat suspicious. It was reasonable for the officers to conclude that the purses might provide some evidence or clue as to where defendant might be located or with whom he might be found. They reasonably could anticipate that the purses might contain some incriminating evidence as to how defendant escaped or what person or persons might have participated in assisting defendant to escape. Hence, the officers would be justified in believing that the purses and their contents would be evidence relating to the offense for which they sought to arrest defendant. It thus was reasonable for these officers to examine such items which were in plain view and which could give some clue as to defendant's whereabouts or be evidence concerning his escape.

■ The fourth amendment does not prohibit all governmental searches and seizures or invasions of privacy. It prohibits only unreasonable searches and seizures. "It merely requires a certain amount of justification for the activities." Knox, *supra,* note 1, at 15. We find justification in the particular factual situation presented for the action of the officers in seizing the purses and examining their contents and in seizing these contents when they unexpectedly discovered identification papers containing the names of the girls involved in the pizza parlor robbery. Most certainly, the facts of this case do not call for application of the exclusionary rule as to the purses and their contents. This would be true if the question had been preserved for review as our rules require. It is particularly true when presented under the plain error rule.

■ Defendant also complains of the admission in evidence of Mary Osburg's keys and the buttons which were torn from her blouse. We find no merit in this contention. These items were discovered and removed from the motel room by Sandra Patterson, the motel manager. She turned them over to the police. The evidence does not show that Sandra Patterson, in looking for and removing these items, was acting as the agent for the police. Consequently, no fourth amendment rights of defendant were violated. That amendment applies only to governmental action, not the acts of individuals. *State v. Brasel,* 538 S.W.2d 325, 330 (Mo. banc 1976).

We, therefore, overrule defendant's entire contention involving the admission into evidence of the various items found in defendant's motel room.

■ Defendant's second contention is that the court erred in admitting evidence of escape while defendant was being held on this charge and erred in giving an instruction on flight.[2] The basis of this contention is that multiple charges were pending against defendant and in such situation flight may not have been evidence of guilt on this particular charge. We overrule this contention. In the first place, a timely motion for new trial was not filed and this contention was not preserved for review. It is not plain error. Furthermore, the law does not support defendant's position. *State v. Hudson,* 491 S.W.2d 1 (Mo.App. 1973). That case correctly noted that the case of *State v. Green,* 236 S.W.2d 298 (Mo.1951) did not hold otherwise. The same is true of *State v. Sanders,* 473 S.W.2d 700 (Mo.1971), the other case relied on by defendant. It held that the point as to admissibility of such evidence was not preserved for review.

■ Finally, defendant complains that the trial court erred in refusing to grant a mistrial when a witness answered a question as to whether defendant had been released to someone on a particular date by

---

**2.** It should be noted that flight instructions are not now permissible. MAI–CR 5.40, adopted January 13, 1975, effective March 1, 1975. However, such direction was not retroactive.

*State v. Jones,* 534 S.W.2d 556 (Mo.App.1976); *State v. Rutledge,* 524 S.W.2d 449 (Mo.App. 1975).

saying he was released or transferred to the Missouri State Penitentiary. The record shows that counsel for defendant declined to request that the answer be stricken and the jury instructed to disregard the answer. He limited his request to a mistrial.

Again, this issue is not preserved for review in a timely motion for new trial. Furthermore, no abuse of discretion is shown. We decline, on the answer in question, to find plain error.

Judgment affirmed.

All concur.