STATE of Missouri, Respondent,

v.

Andrew Wayne WILLIS, Appellant.

No. 64686.

Supreme Court of Missouri,
En Banc.

June 30, 1983.

Rehearing Denied Aug. 16, 1983.

Patrick J. Eng, Columbia, for appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The appellant was found guilty in a court-tried case of one count of possession of over 35 grams of marijuana in violation of § 195.017, RSMo 1978, and one count of possession of methaqualone, in contravention of § 195.020, RSMo 1978. He was sentenced to five years on each count, with the sentences to run concurrently, but execution of all but 60 days of the sentence was suspended in favor of probation. The Court of Appeals mitigated the marijuana count to possession of less than 35 grams, affirmed the methaqualone count, and remanded for resentencing.

We granted transfer, and now take the case as on initial appeal. The defendant argues that all of the controlled substances in evidence were obtained as a result of illegal search and that no part of the conviction can stand. The Attorney General claims that the conviction on both counts should be affirmed. We, of course, take the evidence in the manner most favorable to the judgment and, where there are no specific findings, assume that the trial judge made such findings, when supported by evidence, as are consistent with the result he reached. The defendant produced no evidence other than the testimony of a police officer called adversely, but takes issue with the inferences to be drawn from the state's evidence. We, of course, defer to the trial court's resolution of contested issues. After considering the case in this manner we affirm the judgment in its entirety.

George John Wanner was a police officer of the City of Mexico, patrolling in a police car during the early morning hours of March 18, 1981. A tan and yellow automobile passed him at a speed which he estimated to be well over the speed limit and he undertook pursuit but could not catch up with the speeding car before it passed beyond the city limits. He then abandoned the chase, slowed down, and traveled some distance looking for a place to turn around, but, while still looking, he noticed the tan over yellow vehicle stuck in an embankment

with its rear wheels off the side of the road and the front out on the roadway.

Wanner got out of the police car and approached the defendant's vehicle. At this point the defendant got out of the car and ran up the embankment into a barbed wire fence, on which he was caught. Wanner ran up the embankment to free him and to see if he was injured, and noticed a strong odor of alcohol. Wanner asked the defendant if he was hurt and received an incoherent answer. Wanner noticed a brown leather sheath on the defendant's belt. He removed the knife and then patted the defendant down, finding a bulge in the left sock which contained illegal drugs. A motion to exclude this evidence was sustained. At this point, Wanner called other officers and the defendant was taken into custody, although there is no firm evidence that he was told that he was under arrest. He was taken from the scene in another police vehicle driven by Officer Schneider.

Wanner, at the direction of his superior on the scene, then called a tow truck operator to free the impaled automobile. He found that the doors were locked and called Schneider over the radio to ask him to bring the defendant back with the keys. The car could be towed most easily if put in neutral and the steering column freed. Wanner believed this required the use of the ignition key. The defendant said that he did not have the keys, and Wanner and Schneider then began to look for them on the ground with the aid of flashlights. Schneider found two bags of marijuana and a bottle containing methaqualone tablets, 3 to 5 feet from the rear of the car on the driver's side. He testified without objection that Wanner had told him that he had seen the defendant throw something out of the window, but Wanner did not remember any such conversation. The trial court was justified in finding that the controlled substances found near the car had been in the defendant's possession.

After the tow truck arrived, Wasson, the operator, opened the locked door by means of a lock-out key which he carried, and he and Wanner began a search for the keys inside the car but did not find them. The operator then told Wanner that he was going to open the hood so as to manipulate the gears into neutral, but Wanner continued to look for the keys. He found a sack containing 12 bags of what turned out to be marijuana, in the back seat. He had looked into the sack, thinking that the keys might have fallen in, and noticed the bags. He then called Wasson to witness his discovery.

■ The defendant's primary complaint is that neither Wanner nor his fellow officers, as police officers of the City of Mexico, had authority to make arrests outside the city. We need not explore this interesting issue, nor do we need to consider related questions such as whether a police officer has the same arrest authority outside the area he serves as a private citizen would have. A person may not set up the unlawfulness of an arrest as a defense to criminal charges. *See United States ex rel. Wright v. Cuyler,* 563 F.2d 627 (3rd Cir. 1977); *Virgin Islands v. Gereau,* 502 F.2d 914 (3rd Cir.1974); *Tasby v. United States,* 451 F.2d 394 (8th Cir.1971); *Bowlen v. Scafati,* 395 F.2d 692 (1st Cir.1968), 5 Am.Jur.2d, *Arrest,* Sec. 116. The question of lawfulness of arrest usually comes up in the context of a search of the person. Here no evidence found on the defendant's person was admitted.

■ We have regularly held that an accused person may not set up as a defense the claim that he was improperly extradited or brought into the state. *State v. Johnson,* 457 S.W.2d 762 (Mo.1970); *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983). These holdings are in line with the proposition just advanced.

■ There was no unlawful search of the area surrounding the impaled automobile. The bottle containing capsules and the bags of marijuana were not concealed, but rather in plain view. It is of no significance that they were discovered by the use of artificial light. *State v. Cobb,* 484 S.W.2d 196 (Mo. banc 1972); *State v. Hawkins,* 482 S.W.2d 477 (Mo.1972). The officers were where they had a right to be when they found

these items, and did not pry into hidden areas or places in which the defendant had a proper expectation of privacy.

■ Nor was there any unlawful search of the defendant's automobile. Wanner testified that he broke off pursuit as soon as he left the city limits of Mexico. The court could accept this testimony. If he did not make use of the first driveway or intersection at which he could have made a turnaround, that is of no concern to the defendant. When he saw the car in the ditch he was perfectly justified in stopping and checking on the possibility of serious injury. His pursuit of the fleeing defendant and his undertaking to detain the defendant are matters not germane to the claim of unlawful search of the defendant's automobile. His frisking, after observing the knife, was only prudent, and, because of the sustaining of the motion to suppress, did not contribute to the charges.

■ Wanner also had the right to take steps to remove the automobile from the roadway, where it could be an obstruction to traffic presenting a clear danger to life and limb. *See Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Valentine,* 584 S.W.2d 92 (Mo. banc 1979). He would be justified in believing, from his observations and from the defendant's responses, that the defendant would have been of little help in freeing the automobile. The entry into the car in order to search for the keys was entirely proper. The court could find from the record that the entry was made in entire good faith and in the belief that the car could be moved most efficiently if the ignition key could have been located. Although Wanner, on account of the suppressed bag strapped to the defendant's leg, together with Schneider's discovery, had good reason to suspect the defendant of controlled substance violations, the court could have found that the entry into the car and the search for the keys had independent and proper purposes. The look into the sack was proper because the key might have fallen there. Inasmuch as Officer Wanner could have been found to have entered and

searched inside the car properly, his discovery of the marijuana cannot be said to have been the product of an unlawful search. *State v. Collett,* 542 S.W.2d 783 (Mo. banc 1976).

■ The moving of the car was not related to Wanner's law enforcement duties for the City of Mexico. Any person present at the scene and equipped to give assistance should have done the same thing. There was no reason why he should not have acted as quickly as possible in order to minimize the danger to traffic. A call to the Highway Patrol or the sheriff would only invite additional delay, and, inasmuch as he was not engaged in a criminal investigation, there was no reason to undergo the delay which would have resulted if a warrant had been applied for. Even though Wasson might have told Wanner that he was going to open the hood and manipulate the gears, Wanner was still justified in continuing the search for the keys because the job might still be made easier if the keys could be located. Any claim that the continued search for the keys was a pretext for searching for illegal substances was a matter for the trial court to rule. The ultimate findings demonstrate that this claim was rejected. If no illegal search appears the defendant gains nothing by showing that the officers might have operated in a different manner.

■ The concurring opinion cites authorities holding that the Fourth Amendment does not require suppression of evidence obtained by a private person in a search which would require application of the exclusionary rule if an officer had conducted it. Justice Brandeis' argument for a rule of "fair play" was rejected in *Burdeau v. McDowell,* 256 U.S. 465, 476, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). Here we do not have to deal with the question whether a police officer may enhance his powers of search and seizure simply by crossing a boundary in the continuation of a law enforcement mission, and then asserting "private citizen" status. The record would support a finding that Wanner had ceased his police activities and was engaged in a hu-

manitarian mission when he stopped at the accident scene, and that he tried to help move the car in the interest of safety. Even if the entry into the car be viewed as a technical trespass, this would not require suppression. *State v. Brasel,* 538 S.W.2d 325, 330 (Mo. banc 1976).

■ The sole justification for an exclusionary rule under the Fourth Amendment, and under Art. I, Sec. 15 of the Missouri Constitution, is to deter unlawful police conduct. The trial court could have found, on this record, that there was no unlawful exercise of police authority which contributed to the discovery of the controlled substances. The finding of the incriminating evidence may have been fortuitous, but this circumstance does not mandate suppression. One who transports controlled substances takes the risk that a place in which he might otherwise expect privacy will be entered accidentally or inadvertently, and his cargo exposed.

The judgment on both counts is affirmed.

RENDLEN, C.J., and GUNN and BILLINGS, JJ., concur.

DONNELLY, J., concurs in result in separate opinion filed.

LOWENSTEIN, Special Judge, dissents in separate opinion filed.

HIGGINS, J., dissents and concurs in separate dissenting opinion of LOWENSTEIN, Special Judge.

WELLIVER, J., not sitting.

DONNELLY, Judge, concurring in result.

Officer Wanner pursued defendant because of an observed speeding violation in Mexico. Therefore, after he drove beyond the Mexico city limits, his authority to arrest, search and seize did not exceed that given a private citizen in similar circumstances. *City of Advance v. Maryland Casualty Company,* 302 S.W.2d 28 (Mo.1957). And, in such circumstances, the protection of the Fourth Amendment against unreasonable search and seizure does not apply. *See Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *State v. Brasel,* 538 S.W.2d 325, 330 (Mo. banc 1976); Annot., 36 A.L.R.3d 553 (1971).

I concur in result only.

LOWENSTEIN, Judge, dissenting.

I respectfully dissent. The facts and the chronological order of events require a reversal of the conviction on the count relating to substances found in the car. The sequence of events are as follows:

1. Officer Wanner in the still dark hours of early morning, in the Mexico city limits saw the defendant's vehicle speed by him (an ordinance violation).

2. Wanner chased the vehicle then stopped his pursuit after crossing the city limits but proceeded on the gravel road for approximately 1 mile looking for a place to turn around and return to the city. He did not know or believe a felony was in progress.

3. Wanner then saw the defendant's vehicle with its back two wheels in a muddy ditch with the front out on the roadway.

4. When Wanner got to the defendant's car the defendant jumped out, ran up the embankment and got caught on the fence.

5. Wanner freed the defendant, asked him if he was hurt and received an incoherent answer.

6. Wanner noticed a brown leather sheath on defendant's belt. He removed the knife from the sheath and patted down the defendant.

7. During the pat down Wanner saw a bulge in the defendant's left sock and removed illegal drugs from the sock.

8. Wanner called the Mexico police dispatcher and told him that he needed help.

9. Major Face and Officer Schneider responded.

10. Face told Wanner to call a tow truck to remove defendant's vehicle. Face called the Highway Patrol for the purpose of making an accident report.

11. The Highway Patrolman arrived and then left. Face also left the scene.

12. Pursuant to orders from Face, Schneider took defendant in a Mexico patrol car back to the city. Wanner then discovered the keys to the car were missing and the doors were locked.

13. Wanner called Schneider to bring back defendant with the keys. At that time Schneider had gone about a fourth of a mile from the scene, turned around in the road, without having to use a driveway, and returned with the defendant who had shown him he did not have the keys. The defendant was never asked for permission to open the car by other means. Schneider knew the defendant and his parents lived about a mile and a fourth from the scene, less than 5 minutes away.

14. Back at the scene the defendant assured everyone he did not have the keys, at which point, Wanner and Schneider looked for them on the ground nearby. Some 3 to 5 feet from the rear of the car, and on the driver's side, Schneider found the illegal pills and several bags of marijuana.

15. Schneider then left with defendant to take him back to the police station, (still never arrested) and the tow truck driver then arrived at the scene.

16. The tow truck driver after having been asked by Wanner if he had a lockout device, used it at Officer Wanner's request to open the door to look for the keys. He searched the front of the car including the ash tray, visor, floor and front seat. The tow truck driver told Wanner that he could not find the keys but was going to release the hood latch and manually put the car in neutral so it could be towed. No search warrant was obtained. No permission to open the car was ever given by the defendant.

17. After opening the hood the tow truck driver manually put the car in neutral. (This could have been done from underneath the car but is easier to do from above with hood open, or with the keys).

18. As the tow truck driver was preparing to hook up the defendant's car Wanner told him to come look in the back of defendant's vehicle—he was shown a grocery sack with the rest of the drugs inside. Wanner testified he had found the sack on the back seat of the car while searching for the keys. The search by Wanner for the keys stopped when the contents of the grocery sack were discovered.

The admissibility of the drugs found in the car hinge upon the power of Wanner to open the car and search it. Any action hinges upon Wanner's power, either as a policeman or as a private citizen, to make a valid arrest.

Section 85.561 RSMo. (Supp.1982) in pertinent part gives police officers of third class cities, such as Mexico, the following authority to act as:

1. ... conservators of the peace, and shall be active and vigilant in the preservation of good order *within the city.* (Emphasis added.)

   *    *    *    *    *    *

3. ... shall have power at all times to make or order an arrest with proper process for any offense against the laws of the city, ... and shall also have power to make arrests without process in all cases in which any offense against the laws of the city shall be committed in his presence. Every member of the police department is also empowered to serve and execute all warrants, subpoenas, writs or other process issued by the judge hearing and determining municipal ordinance violation cases of the city at any place within the limits of the county or counties within which the city is located.

   *    *    *    *    *    *

Wanner's activities were beyond the city limits, having followed the defendant for an ordinance violation without knowledge of any felony. He had neither an arrest nor a search warrant. *Rodgers v. Schroeder,* 220 Mo.App. 575, 287 S.W. 861 (1926), involved an action against the marshal of a third class city for damages related to an assault,

beyond the city limits for a speeding violation. With statutory powers similar to those here the court said:

"It is generally held, in the absence of any statute conferring the power, that municipal officers, such as marshals and policemen, have no official power to apprehend offenders beyond the boundaries of their municipalities.... And statutes authorizing such officers to make arrests upon view and without process, being in derogation of liberty, are strictly construed. *Low v. Evans,* 16 Ind. 486. The power of such officers to arrest without process for mere quasi criminal offenses arising from the violation of ordinances is liable to serious abuses, and ought not to be enlarged by judicial construction beyond what is expressly granted or necessarily implied in the statute."

287 S.W. at 863. In concluding that the marshal had no authority the court noted the statute did not contain, any power whether directly or by implication for policemen to make arrests without process beyond the city limits.

*Hacker v. City of Potosi,* 340 S.W.2d 166 (Mo.App.1960), was a suit involving a policeman from a fourth class city who was shot some 1700 feet outside the city limits after chasing a speeding vehicle. After embracing *Rodgers, supra,* the court specifically noted:

"... there is no doctrine of fresh pursuit in cases involving the violation of city ordinances of cities of the third class."

"Such statutes should be strictly construed since they are derogation of individual liberty." *Id.* 171. In denying the compensation claim the court limited the sphere of action for making arrests to within the city limits and the officer could not enlarge his statutory authority. In *City of Advance v. Maryland Casualty Company,* 302 S.W.2d 28 (Mo.1957), the city marshal, after seeing the plaintiff speeding within the city limits later arrested the young man outside the city limits without a warrant. This court held the statute did not authorize such an arrest, but did hold the marshal's surety liable

since the marshal acted by virtue of and under "color of his office". *Id.* 33.

Wanner had no authority here to make an arrest as a police officer. This is evident by the trial court's sustaining the motion to suppress the substances found on defendant's person. The evidence found in the car, to be admissible, must be the product of a lawful arrest and since there was none here there could be no search without a warrant. *See State v. Wiley,* 522 S.W.2d 281, 287 (Mo. banc 1975). Without the power of arrest the defendant's car could not be searched by the police.

There were no "exigent circumstances" here which would lead to a reasonable belief that anything in the car would be removed or destroyed (*Wiley, supra,* at 290). The defendant was gone and the car was locked—there was no reason a warrant could not be obtained by the proper authorities to search the car if it was suspected it contained drugs. In view of the events leading up to the search of the car it would seem that either the Audrain County Sheriff or the Highway Patrol could have obtained a warrant. *U.S. v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), cannot help the state here as the court precludes its decision with the statement:

"We consider the extent to which police officers—who have *legitimately* stopped an automobile and who have probable cause ... may conduct a probing search ..." (Emphasis added.)

*State v. Collett,* 542 S.W.2d 783, (Mo. banc 1976) is also inapplicable as the facts there carefully traced the authority of the officers to be in a place they had a right to be: there was a Missouri warrant for the defendant's arrest on an escape charge, the Missouri officers took the warrant to an Illinois court for issuance of an arrest warrant, then accompanied by Illinois officers, pursuant to Illinois statute, they were authorized to enter the defendant's motel room to make an arrest so long as they had a reasonable belief the suspect was there. After entering the motel room the defendant was not present but incriminating items were sitting in plain view which were al-

lowed in evidence on the theory the police had "rightfully entered the room for the purpose of executing the arrest warrant for the defendant." *Id.* at 786. Although the discovery of the evidence was inadvertent, the police there observed this evidence in a place where they had a right to be. Here Wanner had no right to be in the car. He could not make a valid arrest outside his jurisdictional limits on the speeding charge without an arrest warrant, and had neither permission nor warrant to search the car.

Also inapplicable is *State v. Valentine,* 584 S.W. 92 (Mo. banc 1979) which allows police inventory of automobiles "lawfully within governmental custody as valid under the fourth amendment." *Id.* 98. The same rationale holds true here for the alleged entry to effect the community caretaking function of removing part of the car from the highway—this could only be done after making a valid arrest or being in a place where the police had a right to be. Neither of these factors being present here and with the officers beyond their jurisdiction and without warrant cannot justify entry into the car. They had no more right to remove a car from the road a mile outside of Mexico than they would have to remove a car protruding onto a downtown St. Louis street. Jurisdiction and authority to enter the car is totally lacking here. These ingredients are as essential to the search as would be yeast as a necessary ingredient to baking bread.

Aside from the question of jurisdiction, the facts here show the "looking for the keys" was done as a pretext to search the car. After following the defendant outside the city limits, and by continuing for one mile outside the city and not turning around in a driveway (of which there were several) and by not turning around in the road as Schneider had done, and by chasing after defendant when he left the car, frisking him, finding controlled substances on his person, calling for others from the police department, finding contraband on the ground and continuing to look for the keys in a sack in the back seat after unlocking the car and at a time when the keys were not needed to tow the car, show that Wan-

ner was searching the car for something other than keys. If this whole exercise was done, as the majority states, to move the car out of the roadway to protect the public, then this function could have been accomplished without unlocking the car. The wheels were straight, the transmission manually unlocked—the car was ready to be towed while Wanner continued the search for the keys in the back seat. It further seems highly unlikely that under the facts here that the keys would be thrown in a grocery sack in the back seat before the defendant exited the car. Further, the car could have been off the road, towed to the defendant's home, or his parents could have been asked to come move the car. No exigent circumstances existed to move the car for safety purposes—flares could have been put out until the proper authorities arrived to move the car.

Any attempt to justify the search of the car under the doctrine of "hot pursuit" cannot prevail. This exception to a warrantless arrest outside police jurisdiction pivots upon the officer knowing a felony has been committed and having reasonable grounds to believe the defendant has committed the felony. Here there was no inkling of a felony until after Wanner and others had frisked the defendant, searched the area, sent the defendant back into town, called the tow truck and unlocked the car all without benefit of the defendant's permission nor a valid search warrant. We do not have the situation here of an officer with knowledge of a *felony* continuing the chase. *State v. Keeny,* 431 S.W.2d 95, 97 (Mo. 1968); *State v. Murray,* 445 S.W.2d 296, 298 (Mo.1969). "Hot pursuit" is akin to putting the officer in the status of a citizen when the officer chases and arrests a person outside the city limits. A private citizen may make an arrest under the same ground rules as in hot pursuit, *i.e.,* knowledge of commission of a felony and reasonable grounds to suspect the defendant, *State v. Fritz,* 490 S.W.2d 30, 32 (Mo.1973) *cert. denied,* 411 U.S. 985, 93 S.Ct. 2282, 36 L.Ed.2d 962 (1973).

The alternate attempt by the state to justify the actions of Wanner as a private citizen cannot be upheld under *Fritz, supra.* In *Fritz* the arresting officer was a federal treasury agent, who, after hearing a police broadcast apprehended a fleeing burglar. The Kansas City Police took the defendant from the agent's car where they searched the defendant and found incriminating evidence. This subsequent search by the police, within their jurisdiction and after the arrest by the private citizen was held reasonable. *Fritz, supra,* at 32. There is no evidence in this case of a commission of a felony by defendant prior to the above described actions of the police. *Helming v. Adams,* 509 S.W.2d 159, 166–67 (Mo.App. 1974). Nor can this be described as an "investigative stop" as described in *State v. Gay,* 629 S.W.2d 470, 473 (Mo.App.1981). There a felony had been committed in the sight of an officer in his jurisdiction who relayed the information to the police who stopped the defendant who matched the description. The stop and the arrest were determined to be legal.

Perhaps closest to the facts here are those in *State v. Goodman,* 449 S.W.2d 656, 659 (Mo.1970). There the town marshal, four miles outside his jurisdiction, arrested the defendant who was walking along side the road. The search conducted by the marshal was held invalid since the arrest was invalid "however, an arrest may not be used as a pretext to search for evidence [*State v. Moody,* Mo. 443 S.W.2d 802, 804(2)] and neither the subsequent discovery of incriminating evidence nor an ultimate conviction may be relied upon to uphold the validity of an arrest." *Goodman, supra,* at 69. Since the arrest was invalid so was the search. There the state attempted to argue the justification of the arrest by the marshal as having been made by a private citizen. That contention was not allowed. As here, the state cannot have it both ways; they cannot denominate Wanner as a policeman performing a police function, *i.e.,* removing the car from the roadway, then turn around after admitting he had no power to arrest outside his jurisdiction and say that he and other members of the department were acting as private citizens. All of the actions of the police department, including Officer Wanner, were done while in uniform and under apparent authority to do what they were doing. Wanner performed all acts here under color of office, *Miller v. Owsley,* 422 S.W.2d 39, 42 (Mo. banc 1967). It would not be consistent to allow a private citizen to do what the Mexico Police did such as conducting the search, calling a tow truck and moving a car on the road.

The facts here are not congruent with that portion of *Collett, supra,* wherein the court allowed in evidence other items later found by the motel manager, saying, "[t]he evidence does not show that Sandra Patterson in looking for and removing these items was acting as an agent for the police." The ruling out of a fourth amendment violation in *Collett* on the basis of there being no "governmental action", *id.* 787 simply will not wash here. To say that the tow truck driver unlocked the car in some capacity other than an agent of the police defies the facts. It likewise would be unfair to now describe the activities of Wanner and others as private citizens so as to justify the search without the aid of process.

The rationale of *Goodman* should here hold sway. The judicial admonition of *Rodgers, supra,* and its progeny about strictly construing the jurisdiction of officers within the confines of legislative parameters holds true today. It is a dangerous practice and could lead to "serious abuses", having uniformed police be, for purposes of arrests and searches without process, regarded by the law as private citizens when they are outside their jurisdiction. *Rodgers, supra,* at 763. The "hot pursuit" doctrine is a common sense exception—it simply does not apply here as there was no pursuit based upon a felony.

Upholding this conviction allows uniformed policemen to act unreasonably and improperly, as long as they commit those acts outside their jurisdiction and as private citizens. The majority decision allows such officers, even when not in hot pursuit of a fleeing felon, to chase an individual from a

temporarily disabled automobile, and after quickly determining that the person is not injured, to frisk that person, break into his car at 3:00 o'clock in the morning when that car is partially protruding onto a rural gravel road used primarily at night as a lovers lane and place to drink beer, to conduct a search and finally remove the car in the name of minimizing a danger to the motoring public—all after the proper authorities (Highway Patrol) had been called by the police, responded, and had departed the scene without having done anything. In this set of circumstances Wanner and the others were police without jurisdiction (as distinguished from *State v. Brasel*, 538 S.W.2d 325 (Mo. banc 1976), cited in the majority and concurring opinions, as there an arrest was made within the officer's territorial limits). To say Wanner and the Mexico Police all this time were really private citizens, not conducting a search but performing a humanitarian mission (by looking in a grocery sack in the back seat) presents a trojan horse approach that would all but obliterate any constitutional restraints on law enforcement officers. Dressed as police, acting and appearing as police all through the sequence of events (with constitutional parameters on their activities) to then say that while they were in the back of this young man's car they were really private citizens (to which no constitutional safeguards apply) while helping a stranded motorist whom they had just happened upon belies credulity.

The search of the defendant's car was not reasonable nor was it proper. The judgment on that conviction should be reversed. Since the drugs in the car were not weighed independently, I would do as did the Eastern District and affirm the remaining judgment on the count for the drugs found outside the car but reduce it to the lesser included offense of possession of less than 35 grams and remand for resentencing.